## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 06-69-KAJ |
| | ) | |
| LIONEL BELL, | ) | |
| | ) | |
| Defendant. | ) | |

### MOTION IN LIMINE
### REGARDING EVIDENTIARY ISSUES AT TRIAL

NOW COMES the United States of America, and in connection with the trial of the above case, scheduled to begin December 20, 2006, hereby files this motion in limine for an order regarding evidentiary issues as set forth below:

**Factual Background**

1.      The Defendant is charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

2.      On May 5, 2006, at approximately 11:20 p.m., Wilmington Police Officers Robert Fox and James MacColl conducted a traffic stop of a vehicle with a broken windshield.  The defendant, a passenger in the vehicle, fled from the police.  Officer Fox pursued the defendant on foot, while Officer MacColl remained behind with the driver and two other passengers.  During the course of the footchase, Officer Fox saw the defendant throw the firearm.  Officer Fox was able to pick up the firearm as he ran after the defendant.  Shortly thereafter, Officer Fox, with the assistance of Officer Thomas Esterling, was able to apprehend the defendant.

3.    During the footchase, Officer Fox made transmissions over police radio regarding the progress of the chase, the defendant's direction of travel, and at one point, stated that "the subject just ditched a gun." These transmissions were recorded. A transcript of the relevant portions of the recording is attached as Exhibit "A."

4.    The firearm charged in the Indictment is a .25 caliber Raven Arms Model MP-25 pistol, and at the time it was recovered, it was loaded with three .25 caliber rounds. Two of the three rounds were marked "R-P 25 auto," and one round was marked "FC 25 auto."

5.    Officer MacColl wrote the primary police report with regard to this incident, and Officer Esterling wrote a supplemental report. On May 12, 2006, Officer MacColl was the sole witness to testify about this matter at a preliminary hearing in the Court of Common Pleas for the State of Delaware.

6.    Approximately six weeks before the defendant's arrest on the instant charges, on March 24, 2006, Wilmington Probation and Parole Officers discovered a box of Remington UMC .25 caliber ammunition and a gun holster during an administrative search of the defendant's residence. The ammunition was found hidden in a small table in the defendant's bedroom. On that table was an enveloped addressed to "L. Bell" containing correspondence addressed to the defendant from the Central Violation of Probation Center. The holster was found in a crate in the bedroom. On May 24, 2006, the defendant pleaded guilty to possession of ammunition by a person prohibited in the Superior Court of the State of Delaware, New Castle County.

7.    The Government has evidence that the box of ammunition is of the same brand and caliber as two of the three bullets contained in the firearm possessed by the defendant on May 5, 2006. Moreover, a receipt from Miller's Gun Shop shows that, on August 6, 2003, a third party purchased the firearm in the same transaction as the holster and a similar box of ammunition. The box of ammunition found in the defendant's bedroom has a sticker from Miller's Gun Shop.

2

**Legal Argument**

A.      **The Recording of Officer Fox's Transmissions Constitute a Present Sense Impression and/or an Excited Utterance**

8.      The Government seeks to admit the radio transmissions made by Officer Fox during the course of the footchase, and submits that they are admissible under the present sense impression and/or the excited utterance exceptions to the hearsay rule, pursuant to Federal Rules of Evidence 803(1) and 803(2).[1]

9.      Federal Rule of Evidence 803 provides that "[t]he following are not excluded by the hearsay rule, even though the declarant is available as a witness: (1) Present Sense Impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter. (2) Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

10.     Officer Fox personally perceived the defendant's movements as he fled, and made radio transmissions contemporaneously with his observations. The statements are descriptive of the defendant, his immediate direction of travel, and his actions during his flight, including his throwing of a gun. Therefore, they qualify under the present sense impression exception to the hearsay rule, pursuant to Federal Rule of Evidence 803(1). *See United States v. Mitchell*, 145 F.3d 572, 576 (3d Cir. 1998) (stating that the three principal requirements for admissibility of evidence under the present sense impression rule are: "(1) the declarant must have personally perceived the event

---

[1] Attached as Exhibit "A," is a draft transcript of the excerpt of the radio transmissions, reflecting the portion of the recording that the Government intends to use at trial.

described; (2) the declaration must be an explanation or description of the event rather than a narration; and (3) the declaration and the event described must be contemporaneous.").[2]

11.   Alternatively, the transmissions constitute an excited utterance. Officer Fox's tone of voice on the recording, combined with the circumstances of the late-night footchase, make clear that the defendant's sudden flight and throwing of the firearm were startling events. Officer Fox personally observed the events and made the statements before having time to reflect or fabricate. *See United States v. Brown*, 254 F.3d 454, 458 (3d Cir. 2001) (citations omitted) (setting forth four requirements for an excited utterance: "(i) a startling occasion; (ii) a statement relating to the circumstances of the startling occasion; (iii) a declarant who appears to have had opportunity to observe personally the events; and (iv) a statement made before there has been time to reflect and fabricate.").

12.   Lastly, the recording does not implicate the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004), because Officer Fox's statements were not "testimonial" in nature within the meaning of that decision. *See Davis v. Washington*, 126 S.Ct. 2266 (2006) (holding that a 911 call was not testimonial in nature because the declarant "was speaking about events *as they were actually happening*, rather than describing past events," the declarant "was facing an ongoing emergency," and her "primary purpose was to enable police assistance to meet [this] ongoing emergency" (emphasis in original)).

---

[2] The Third Circuit has noted that a present sense impression must be "contemporaneous or spontaneous statements" while a "narration" occurs if statements "were conclusions based upon information [the declarant] had processed." *See Citizens Financial Group, Inc. v. Citizens Nat. Bank of Evans City*, 383 F.3d 110, 122 (3d Cir. 2004) (quoting *United States v. Guevara*, 277 F.3d 111, 127 (2d Cir. 2001)); *see also United States v. Woods*, 301 F.3d 556, 562 (7th Cir. 2002) (holding that a narration is a "calculated interpretations of events rather than near simultaneous perceptions"). In this case, it is clear that Officer Fox's radio transmissions were a simultaneous description of the footchase as it occurred, and were made without time to calculate or process the information.

**B.** **Evidence Relating to the Defendant's Possession of the Holster and Matching Ammunition Found in the Defendant's Bedroom is Admissible Pursuant to Fed. R. Evid. 404(b)**

13.     Pursuant to Federal Rule of Evidence 404(b), the Government seeks the admission of evidence relating to the defendant's possession of the holster and matching ammunition, found in his bedroom approximately six weeks prior to his arrest on the instant charges. The Government would introduce this evidence to show (1) the identity of the individual who possessed the firearm; (2) that the defendant had the opportunity to possess the ammunition contained in the firearm; and (3) that the defendant knowingly possessed the firearm.

14.     Federal Rule of Evidence 404(b) provides, in pertinent part, that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The Third Circuit has "recognized that 'Rule 404(b) is a rule of inclusion rather than exclusion'" and in general, it will "favor the admission of Rule 404(b) evidence when it is relevant for any other purpose than to show the defendant's propensity to commit the charged offense." *United States v. Daraio*, 445 F.3d 253, 263 (3d Cir. 2006) (quoting *United States v. Givan*, 320 F.3d 452, 460 (3d Cir. 2003)). A four-part test governs the admissibility of Rule 404(b) evidence: "(1) the evidence must have a proper purpose; (2) it must be relevant; (3) its probative value must outweigh its potential for unfair prejudice; and (4) the court must charge the jury to consider the evidence only for the limited purposes for which it is admitted." *Daraio*, 445 F.3d at 264.

15.     The fact that the ammunition found in the defendant's residence was of the same type, caliber, and brand as two of the three bullets in the firearm charged in the Indictment serves to establish the identity of the person who possessed the gun. The relevance to identity is heightened

by the temporal proximity — six weeks — between the discovery of the box of ammunition and holster and the defendant's arrest on the instant charges.[3]

16.     The prior possession of the box of matching ammunition is also classic evidence of opportunity, since it provides a logical explanation for the source of two of the three bullets in the firearm. *See Government of Virgin Islands v. Joseph*, 685 F.2d 857, 860 (3d Cir. 1982) (finding that evidence that the defendant previously possessed a similar gun "was relevant to show the defendant's opportunity to commit armed robbery").

17.     The government must show that the defendant possessed the firearm knowingly. The fact that the defendant possessed the box of ammunition and the holster six weeks prior to allegedly possessing the firearm, serves to establish that the defendant acted with knowledge. While the defense will likely deny possession of the firearm, the defendant's knowing possession of the gun remains an element of the crime that the government must prove beyond a reasonable doubt. *See Daraio*, 445 F.3d at 265 (holding that where defense does not "eliminate the intent issue from the case," "Rule 404(b) evidence was relevant to demonstrate [the defendant's] intent").[4]

---

[3]The fact that a third party purchased the box of ammunition, the holster, and the firearm in the same transaction creates a further identifying link. Witnesses and evidence establishing this transaction are available for trial, however, the Government will not necessarily present this evidence unless the Court deems it necessary to establishing identity under Rule 404(b).

[4]*See also United States v. Jernigan*, 341 F.3d 1273, 1282 (11th Cir. 2003) ("[T]he fact that Nelson knowingly possessed a firearm in a car on a previous occasion makes it more likely that he knowingly did so this time as well, and not because of accident or mistake.");    *United States v. Cassell*, 292 F.3d 788, 793 (D.C. Cir. 2002) (noting, in the context of a felon in possession case, that "[w]e have previously held that 'in cases where a defendant is charged with unlawful possession of something, evidence that he possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged' " (quoting *United States v. King*, 254 F.3d 1098, 1100 (D.C. Cir. 2001)); *United States v. Wayne Brown*, 961 F.2d 1039 (2d Cir. 1992) (permitting evidence that defendant possessed firearms other than the Uzi charged in the indictment, because the other firearms tended to establish "both his knowledge, and the absence of mistake or accident, with respect to the presence of the Uzi in his apartment.").

18.     Evidence that, six weeks before the defendant's arrest, he possessed a box of matching ammunition and a holster — all of which were purchased on the same occasion as the firearm the defendant is charged with possessing — is highly probative of his guilt. The probative value of this evidence clearly outweighs the potential for unfair prejudice, particularly if the jury were given an instruction limiting the consideration of this evidence to proper purposes. A proposed limiting instruction is attached as Exhibit "B."

**C.      Officer MacColl May Not Be Called Solely for the Purpose of Introducing His Preliminary Hearing Testimony**

19.     In Officer MacColl's preliminary hearing testimony he stated that "Officer Fox observed [Bell] draw, pull an object from inside his coat. He reached in front of himself, pulled out an object, and tried to throw it down on the street with his left hand."

20.     The Government understands that the defense intends to present evidence that Bell was not wearing a coat on May 5, 2006, and then plans to call Officer MacColl for the purpose of introducing his preliminary hearing statement to impeach Officers Fox and MacColl.

21.     The Government expects that Officer Fox would testify that he does not recall Bell's attire on May 5, 2006. Officer MacColl would testify that he does not have first-hand knowledge of the defendant's throwing of the gun because he remained back with the vehicle and did not participate in the footchase. Moreover, the Government expects that Officer MacColl would testify that he does not have a direct recollection of Bell's attire and that he does not recall Officer Fox mentioning that Bell was wearing a coat.

22.     MacColl's preliminary hearing statement is inadmissible hearsay. While it is a prior statement given under oath, the preliminary hearing testimony does not qualify as non-hearsay under Federal Rule of Evidence 801(d)(1)(A) for two reasons.[5] First, Officer MacColl's preliminary

---

[5] Federal Rule of Evidence 801(d) provides in pertinent part, "A statement is not hearsay if (1) Prior Statement by a Witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the

hearing testimony about the coat is double hearsay, and therefore not admissible under Federal Rule of Evidence 805, which requires "each part of the combined statement[]" to "conform[] with an exception to the hearsay rules." MacColl's preliminary hearing testimony was that *"Officer Fox observed* [Bell] draw, pull an object from inside his coat." (emphasis added). Implicit in this statement is a second layer of hearsay — MacColl could only have known these facts if he were told them by Officer Fox. This second layer of hearsay does not fit within the Rule 801(d)(1)(A) exception, as the communication between Fox and MacColl was not a prior inconsistent statement given under oath.

23.    Second, Rule 801(d)(1)(A) applies only where the statement is " *inconsistent* with the declarant's testimony" (emphasis added). As neither Officer Fox nor Officer MacColl will testify about the defendant's attire, there will be no inconsistency justifying the introduction of the preliminary hearing statement as substantive evidence.

24.    In addition, the preliminary hearing testimony is not proper impeachment material as to Officer Fox because it is not a statement by him, but rather, is a statement by Officer MacColl. Officer Fox would testify at trial that he does not recall Bell's attire, and would state that he did not tell Officer MacColl anything about a coat. It is well established that a witness may not be impeached by a third party's characterization of his statements under Federal Rule of Evidence 613. *See United States v. Barile*, 286 F.3d 749, 757 -758 (4th Cir. 2002) (remanding for the district court to determine whether the statements were "reasonably attributable to" the witness before permitting them to be used for impeachment purposes); *United States v. Saget*, 991 F.2d 702, 710 (11th Cir. 1993) ("[W]e conclude that a witness may not be impeached with a third party's characterization or interpretation of a prior oral statement unless the witness has subscribed to or otherwise adopted the statement as his own."); *see also* 4 Weinstein's Federal Evidence, § 613.04[1] (2d ed. 2006).

---

declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition."

25.    It would also not be proper for the defense to call Officer MacColl solely for the purposes of impeaching him with this testimony.  Calling a witness for the sole purpose of impeachment or in order to introduce otherwise inadmissible evidence is an abuse of Federal Rule of Evidence 607. *See United States v. Sebetich,* 776 F.2d 412, 428-29 (3d Cir. 1985) (holding that the defendants could not invoke "impeachment" and Rule 607 as a means of circumventing the hearsay rules); *see also BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 955 F.2d 1467, 1475 n.6 (11th Cir. 1992) ("[A] witness may not be called to the stand solely for the purpose of impeaching him.").

Wherefore, the United States of America respectfully requests that the Court enter an order, in the form attached, before the start of trial.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney


By:  /s/Ilana H. Eisenstein
     Ilana H. Eisenstein
     Assistant United States Attorney

Dated: November 28, 2006

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Criminal Action No. 06-69-KAJ |
| | ) |
| LIONEL BELL, | ) |
| | ) |
| Defendant. | ) |

**ORDER REGARDING ADMISSIBILITY OF TESTIMONY**

Now therefore, this 28th day of November 2006, after consideration of the Government's

Motion in Limine, and after having heard argument from the parties,

IT IS HEREBY ORDERED THAT:

The recording of Officer Fox's transmissions qualifies under the present sense impression

and excited utterance exceptions to the hearsay rule, pursuant to Federal Rule of Evidence 803(1)

and (2).

Evidence relating to the defendant's prior possession of a box of ammunition and holster is

admissible as evidence of identity, opportunity, and knowledge pursuant to Federal Rule of

Evidence 404(b), and its probative value outweighs its potential for unfair prejudice. The Court

will give a limiting instruction in substantially the form proposed by the Government.

The preliminary hearing testimony of Officer MacColl is not admissible under either

Federal Rule of Evidence 801(d)(1)(A) or Federal Rule of Evidence 613.

Should circumstances arise during the presentation of evidence that either party believes

justifies a reconsideration of any of these rulings, the party may seek reconsideration of these

rulings outside the presence of the jury.

_____

Honorable Kent A. Jordan
United States District Judge

**"Exhibit A"**

DRAFT TRANSCRIPT OF RADIO TRANSMISSIONS FROM 5/5/2006

| | |
|---|---|
| Officer Fox: | 20 Bravo, we got both suspect[s] running |
| Officer Fox: | I am, um, eastbound on 3rd from Connell |
| Officer Fox: | Southbound on Franklin. |
| Officer Fox: | Subject just ditched a gun. |
| Officer Fox: | Southbound on Franklin from 3rd. |
| Officer Fox: | Black Male/White T-shirt |
| Officer Fox: | He's, um, eastbound on 2nd from Franklin |
| Officer Fox: | He's coming up, he's right . . . South Side |
| | Unintelligible (breathn |
| Officer MacColl: | 18, let me know when you get to 3rd and Connell, I got three stopped |
| Officer Esterling[?]: | 4.2 we got him. |

**EXHIBIT "B": Proposed 404(b) Limiting Instruction**

## OTHER ACTS BY THE DEFENDANT

The government has introduced evidence that, prior to the acts charged in the Indictment, the defendant possessed a box of ammunition and a holster. If you find the defendant did possess a holster and a box of ammunition on that occasion, you can consider the evidence to show the identity of the individual who possessed the firearm charged in the Indictment, to establish the defendant's knowledge of his possession of the firearm, or to show that the defendant had an opportunity to commit the crime charged in the Indictment.

I caution you that you may only consider this evidence for these limited purposes I just described and not to prove that the defendant is a bad person and thus he was predisposed to do bad things, such as participate in the charged conspiracy. In other words, you should consider the evidence that the defendant previously possessed a holster and box of ammunition only for the specific, limited purpose I have described and in conjunction with my other instructions. To consider this evidence for any other purpose would be improper.

## Notes

*United States v. Cruz*, 326 F.3d 392, 397 (3d Cir. 2003).

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Criminal Action No. 06-69-KAJ |
| | ) |
| LIONEL BELL, | ) |
| | ) |
| Defendant. | ) |

### CERTIFICATE OF SERVICE

I, Jennifer Brown, an employee in the Office of the United States Attorney, hereby certify under penalty of perjury that on November 28, 2006, I electronically filed:

### MOTION IN LIMINE
### REGARDING EVIDENTIARY ISSUES AT TRIAL

with the Clerk of Court using CM/ECF. Said document is available for viewing and downloading from CM/ECF, which will send notification of such filing(s) to the following:

James A. Natalie, Jr., Esquire
Woloshin Lynch, Natalie & Gagne, PA
3200 Concord Pike
Wilmington, DE 19803


/s/Jennifer Brown
Jennifer Brown